Judge Buckner,
delivered the opinion of the court.
Buford, as executor of the last will and' testament of William Banton, recovered,judgment in the circuit court, for three thousand seven hundred and twenty six dollars, twelve and a half cents, and costs, against William T. Banton, John Banton, and' William Faris, On an obligation executed by them, to • the testator of the plaintiff; Buford;.in which William T. Banton was principal, and'the other two obligors were his sureties. An execution of fieri facias issued on the judgment, was placedin the hands of the sheriff of Lincon county, under which, a tract of land of one hundred and thirty acres, was levied upon, as the property of John Banton, and sold. William Hamilton,, being the highest bidder, became the purchaser; and teceived therefor, the sheriff’s deed..
On the motion of John Banton, the circuit court quashed the sale, and bond executed by Hamilton and Faris his surety, as the price of the land. To reverse that judgment, the plaintiffs in error, who were the defendants in the motion, prosecute this writ of error, with supersedeas. The evidence was spread upon the record. By whieh it appears, that after the execution had been issued, John Banton and Faris, looking upon it as probable that very little, if any part of the amount, could be made out of the property of their principal, entered into an agreement, that Faris should pay one thousand dollars towards the discharge of the execution, estimating as a part thereof, nine hundred and twenty-five dollars, which he had previously paid; and that as John Banton owed William T. Banton, one thousand dollars, as the *236 price of a horse, purchased from him, he should pay two thousand dollars towards the discharge of said .execution. If, after those payments, the remainder could not he made out of the property of. their principal, each one of the sureties agreed to pay equal portions of the amount undischarged. They also agreed to meet at a place appointed for the purpose, replevy the debt, and consummate the stipulated arrangement. This,, however, was not done, and the sheriff who had the execution in hand, proceeded to levy it. it was credited by Buford, with the nine hundred- and twenty-five dollars, paid by Faris. A negro boy,-levied on, as the property of Faris, was sold for the sum of four hundred and fifty two dollars and sixty-five rents. Personal property levied on, as belonging to John Banton, was sold for one thousand nine hundred and seven dollars and eighty one cents. The land aforesaid, was sold for five hundred and ten dollars and fifty cents; the sales having been made upon a credit of two years. It appears that Faris had considerable personal property, in the county where the land sold was situated, which was legally subject to be levied on, in virtue of said execution; but, that the sheriff levied on the land, at the instance and request of Faris; and that 'Hamilton bought (he land for Faris’ benefit, John Banton forbidding the sale. The errors assigned, are in general terms, that the circuit court erred in quashing the sale, and sale-bond, as stated in the bill of exceptions.
By the notice, on which the motion in the circuit court was founded, we are furnished with the ground assumed by John Banton, and, on which that court founded its judgment, quashing the sale, &c. It is, that at the time the levy was made, Faris had persona] property in the county of Lincoln, sufficient to satisfy said execution, and which was liable to it.
Whether, under such notice, John Banton had a right to rely on the additional grounds; that Faris requested the sheriff to levy the execution on the land; and that Hamilton bought it for Fairs’ benefit, need not now be inquired into, as he was permitted to dosor without objection. The question presented, is, was the judgment of the court correct, under the proof exhibited? That by the act subjecting lands *237 to execution?, it is made the uutv of the sheriff to make the amount of the ex- cution in hi« huui|s. first out of the personal estate of the defendant, therein, if he can; if no*, out of the slaves; and, if there he none, or not sufficient, to raise the amount, that (hen the land is to be sold, is true. It is abo, ids dim to advertise the time and place of sale, as required by law; and for a violation of his dut\, or either of thia-e duties, he is responsible to the defendant, in the execution, for the injury sustained.
Tin- la..» winch pre-aoi ¡tv *h.- or-dei in winch the differ >nt spoon i of pro-cer! •• , ni a de-le-i'i mi i- an ex ecu > -a ‘hiillb- Mitd, irnv -Il is -ho'e wlui h i«qn'i'& th- 'ime -.nd place o! nilp t o be inlvF rlis-<-d, are merely directory, and du not invalidate a míe which is made in violation of them, unless the purchaser participated in the illegality-
Officer,hold-several'dofen-isnoi sónalproper-" ty n-all of [1hem¡/)°í1ore 0j'either-
The sale, however, would not he therein invalidated, unless the purchaser participated in the illegality. The clauses imposing those duties, are merely direr tory to the officer. Vide the case of Hayden, &c. vs. Dunlap, III Bibb, 216; and Beeler’ heirs, vs. Bullitt’s heirs, III Mar. 280. If, in a case, whore the plaintiff in.the execution had become the purchasei of the land, he had by his directions or management, been instrumental, in procuring the officer to disregard any of his duties relating to the sale, calculated to operate injuriously to the debtor; or has induced him to make the sale, in any respect, unfairly and fraudulently, it ought, no doubt, tobe quashed; Mills vs Rogers, II Litt’s. Rep. 217. The question, therefore, on which this case must turn, is this; was the omission, on the part of the sheriff, to levy the execution on the personal property of Paris; and his levying it on, and selling the land of John Banton, at the request of Faris; and it having been purchased by Hamilton, for Faris’ benefit, sufficient ground to justify thq. judgment of the circuit court?
What the personal properly consisted of, which Faris owued, in the county of Lincoln; whether the sheriff could have got it into his po-session to levy on, the statement of the letdimony, in the bill of exceptions, leaves us to conjecture. But waiving that consideration, we are not aware of any case, in which it has been decided, that tinder an execution against several defendants, it is the duty of the officer, to haust the personal property of all the defendants, before the land of either can be legally sold, under it. There is certainly, no principle of reason or justice, which requires it. The sheriff has a right to do so, ^ he chooses, unless land be voluntarily given up, for *238 the purpose. He may make fhe whole amount due, by a sale of the property of any one defendant; or, he may compel all to contribute equal portions, or in case of failure, may sell the property of the delinquent. He has no authority to sell the land of any defendant, unless he consent to it, while he can levy on a sufficiency o,f personal property belonging to such defendant; but, to compel him, where there are two or more defendants, to make the whole amount of the execution out of the personal property of one defendant, who pays his proportion of the debt, before he can be allowed to sell the land of a co-defendant, whose estate consists entirely of land, would be unreasonable. The letter of the statute does not require it, nor shall we. give such an exposition of it, as will produce such unjust consequences.
Where judgment is recovered against several defendants, for a debt, towards the payment of which all are injustice bound to contribute equal portions, it having been contracted for their joint benefit; or where all are sureties, neither can reasonably complain, that he has been compelled so to contribute. The sheriff, it is true, is under no legal obligations to make the amount in equal portions out of fhe property of each, because each is bound for the whole; and the officer is often without any satisfactory information on tiie subject of the circumstances under which, the debt was contracted. He may not know, whether it is just for each one to pay a part, or whether one should pay all. But, it frequently happens, that he is; correctly informed on those points; and, where he has such information, it would be but proper for him to re~ gard them, and act accordingly, so far as he can do it, without inconvenience and consistently with the rights of the parties.
Should a judgment be recovered against A as principal, and B as surety, the whole of A’s property consisting of lands, and the whole of his suritysof chattels, the legislature can not have intended to make it the duty of the officer to sell the last cent of B’s personal property which may be subject to execution, leaving the land of his principal untouched.' The provisions of the statute, in relation to the order in which the property of a debtor under execution *239 ¡¿hall be sold, was intended to protect him in the enjoyment of a description of property, to which, being more permanent, the law attaches greater consequence and value; and therefore, has made it the duty of the officer to sell his personal property first; but could not have intended to produce the oppression and injustice, to which the interpretation given to the act, by the circuit court, obviously leads.
Petition.
In every aspect in which the caso can bn rationally presented, we are of opinion, that it vvas improper to sustain the motion.
The judgment of the circuit court, quashing (he sale and salebond, must he reversed, with costs, and the cause remanded, to that- court, with directions to dismiss the motion with costs.